# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jupiter Tavern, Inc., and Gretchen G.   :
Pettit as successor in interest to         :
Liquor License No. H-1212,           :
                         Appellants   :
                                    :
                 v.            :   No. 1243 C.D. 2016
                                    :   Argued: April 6, 2017
Pennsylvania Liquor Control Board   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: July 12, 2017**

Gretchen G. Pettit (Pettit), who claims she is successor in interest to Jupiter Tavern, Inc. (Licensee), appeals from the June 20, 2016 Order of the Court of Common Pleas of Monroe County (common pleas) that denied Pettit's appeal from the Decision of the Pennsylvania Liquor Control Board (Board) denying her *nunc pro tunc* applications for renewal and validation of Hotel Liquor License No. H-1212 (License) for the premises located at Rural Route 3, Kunkletown Road, P.O. Box 615, Kunkletown, Pennsylvania. On appeal, Pettit argues that common pleas erred by: (1) finding that Pettit did not have standing to appeal the Board's Decision; (2) applying the incorrect legal standard regarding *nunc pro tunc* relief under *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa.

1996), instead of the standard set forth in *Eathorne v. State Ethics Commission*, 960 A.2d 206 (Pa. Cmwlth. 2008); and (3) disregarding substantial evidence that *nunc pro tunc* relief was warranted in this case.[1]  Pettit wants the Board to accept the renewal and validation applications *nunc pro tunc* so the License can be transferred to Kunkletown Pub, LLC, which belongs to Pettit.  However, because Pettit provided no credited evidence that she has an interest in the License, which could support her *nunc pro tunc* Applications, and therefore does not have standing in this case, we are constrained to affirm.

## I.     Background

### A. History

The facts of this case are somewhat confusing as a result of multiple errors with regard to the License, and so our recitation will chronologically describe what occurred, based on testimony and documentation presented throughout the course of the hearings and appeal.  The License was last listed as owned by Licensee, which, although listed as a party in the proceedings, has not participated in any of the proceedings.  (*See* Common Pleas Opinion (Op.) at 1.)  The License expired on either September 30, 2010, or September 30, 2011.[2]  By letter dated October 19,

---

[1] Pettit's arguments have been reordered from how they appear in her brief.

[2] There is some confusion regarding the date the License expired. The Bureau of Licensing (Bureau) notified Licensee via letter dated August 3, 2010, that it received a validation application without tax clearance.  By letter dated October 6, 2010, the Bureau notified Licensee that the License expired on September 30, 2010, and that the validation application was pending. However, the Board refers to September 30, 2011, as the expiration date of the License, (Board Decision, Conclusions of Law (COL) ¶ 6), while common pleas refers to September 30, 2010, as the expiration date.  (Op. at 1.)  Common pleas nonetheless references September 30, 2013, as the filing deadline for the renewal applications.  Therefore, we will use the later date, September 30, 2011, as the date of expiration.

2

2010, TD Bank informed the Bureau of Licensing (Bureau) that TD Bank was the holder of a note for $215,000 from Licensee that was secured by a perfected lien on Licensee's rights in the License, and that Licensee had defaulted on its obligations to TD Bank. In response, the Board's Chief Counsel advised TD Bank that the Board "does not recognize security interests in licenses that it issues" given that licenses are "not recognized as property between the Board and the licensee,"[3] and that it "recognizes only the named licensee as having an interest therein." (R.R. at 81a.) The Board explained that a licensee retains the privileges of a license **unless and until the Board receives**

> a Court Order, a Writ of Execution together with a Sheriff's Bill of Sale, or a sworn affidavit, executed by counsel, representing that the licensee is subject to an agreement which authorizes a third party to act on behalf of a licensee in the event of a default, that licensee is in default, that all necessary and required procedures have been followed pursuant to any underlying agreements and all applicable laws.

(*Id.* at 81a-82a.) The Board explained that TD Bank could acquire the right to sell or apply for a transfer of the License if it submitted a sworn affidavit. However, TD Bank has apparently never complied with these requirements.

By letter dated April 1, 2012, the Bureau informed **Licensee** that it did not receive a renewal application for the term beginning October 1, 2011. (Board Decision, Findings of Fact (FOF) ¶ 5.) The letter also explained that **Licensee** could file the application late pursuant to Section 470 of the Liquor Code (Code),

---

[3] Section 468(d) of the Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-468(d), provides, in pertinent part, that a liquor "license shall constitute a privilege between the [B]oard and the licensee. As between the licensee and third parties, the license shall constitute property." 47 P.S. § 4-468(d).

47 P.S. § 4-470,[4] but that it must be submitted **on or before September 30, 2013**. No renewal application was submitted by September 30, 2013.

A Sheriff's sale of Licensee's property was held in March 2013, after which St. Matthew's U.C.C. (St. Matthew's) received a deed for the real property. According to Pettit, she had an agreement with St. Matthew's that she would receive a Bill of Sale for Licensee's hotel, pub, and the License, and St. Matthew's would retain a half-acre of land abutting its property. A document titled "Bill of Sale,"[5] dated **October 15, 2013**, purports to certify that, in **March 2013**, the Sheriff

> sold the personal property of . . . [Licensee] in accordance with the Court Order dated December 22, 2010, including "(A) all business assets of either defendant used in association with the restaurant/bar operation at the subject property; and (B) the rights to Pennsylvania liquor license H-1212, a copy of which is attached hereto.["]
>
> The purchaser is St. Matthew's U.C.C. by [Pettit's former attorney], who has authorized Kunkletown Pub, LLC as its designee in accordance with the Court Order dated December 22, 2010 for the bid price of $118,751.85.

(R.R. at 180a.) The Court Order dated December 22, 2010, is not in the record.

Sometime in **March 2014**, Pettit's counsel filed a license transfer application, which was denied because the License had expired. According to Pettit, she then applied for a new hotel liquor license at the advice of state officials, which was also denied because the premises did not meet the current room requirements. Pettit then contacted the Board and was informed that she would

---

[4] Section 470 provides that the Board may accept late-filed renewal applications if certain requirements are met. 47 P.S. § 4-470.

[5] Pettit submitted this document at the hearing before common pleas on March 22, 2016.

need to file renewal and validation applications and request a *nunc pro tunc* hearing.

On **April 23, 2015**, Pettit filed a renewal application for the licensing period effective October 1, 2013, and ending September 30, 2015, and a validation application for the validation period beginning October 1, 2014, and ending September 30, 2015, and on **July 20, 2015**, she filed a renewal application for the licensing period effective October 1, 2011, and ending September 30, 2013, and a validation application for the validation period effective October 1, 2012, and ending September 30, 2013. (FOF ¶¶ 6-9) (collectively, Applications). Pettit filed the Applications on behalf of **Licensee**, listing herself as "owner" and "owner/manager." (R.R. at 71a-76a.) By letter dated September 28, 2015, the Bureau notified Pettit's counsel that it objected to the Applications based on their untimely submission and informed him that the License had expired on September 30, 2011, and that a hearing would be held. (Objection Letter, Board's Br., App. B; FOF ¶¶ 10-11.)

By letter dated October 27, 2015, the Bureau notified Pettit's counsel that a hearing on the Applications would be held to address certain tax issues governed by Section 477 of the Code, 47 P.S. § 4-477,[6] which include Pettit's failure to submit additional fees; her failure to submit a renewal application for the licensing period effective October 1, 2015; and whether the Board could accept the Applications *nunc pro tunc* under the standard set forth in *Cook*. (Notice Letter, R.R. at 68a-70a.)

---

[6] Section 477 of the Code sets forth the provisions requiring applicants for renewal to furnish certain state tax information and providing that the failure to do so will result in the denial of a license renewal. 47 P.S. § 4-477.

## B. *Proceedings before the Board*

A Board Hearing Examiner held a hearing on November 10, 2015. Pettit testified at the hearing, and documentary evidence also was introduced. No one appeared on behalf of Licensee.

Pettit testified as follows.[7] She has no ownership interest in Licensee, but acquired the rights to the License "at a third-party foreclosure sale." (FOF ¶¶ 12-13.) The first time she met with an attorney about purchasing Licensee's hotel, pub, and the License was in January 2013, and her then attorney[8] contacted counsel for TD Bank, which had foreclosed on Licensee's Property, which included a hotel, pub, the License, and the land off the back of the pub. St. Matthew's purchased Licensee's Property at the sale, and Pettit acquired the hotel, pub, and rights to the License from St. Matthew's on **August 5, 2013**. Her attorney never provided her with any transfer papers from the Board, nor did she sign any transfer papers. She had an agreement with St. Matthew's that she would pay 75 percent of the final sale price because St. Matthew's only wanted a half acre of land off the back of the pub adjoining the church property. (Hr'g Tr. at 36, 38.) Pettit inquired with her attorney about the License, and by letter dated **October 10, 2013**, her attorney informed her that he did not have the requisite experience in liquor license transfers to assist her. Pettit received a Bill of Sale for the License from the Sheriff on **October 15, 2013**, which she agreed was a requirement to move forward with the Board. (*Id.* at 21.) She only became aware of the problems with the License in March of **2014**, when the Bureau denied her transfer application because the

---

[7] Pettit's November 10, 2015 testimony appears on pages 10a-44a of the Reproduced Record.

[8] Pettit's then attorney was a partner of the attorney who represented St. Matthew's.

License had expired on October 1, 2013. (*Id.* at 24-25.) Pettit, on her own, then filed an application for a new hotel liquor license, but the application was denied. Pettit was thereafter notified by the Board to seek *nunc pro tunc* relief and to file the Applications, which, after finding new counsel, she did. (*Id.* at 29.)

The Board, via letter and order dated January 13, 2016, denied Pettit's request for *nunc pro tunc* relief and ordered license fees in the amount of $1,980.00 to be returned to her. The Board also informed her that it would issue an opinion if an appeal was filed. On February 2, 2016, Pettit filed a *nunc pro tunc* appeal[9] from the Board's Decision, arguing that Licensee is the previous owner of the License; Pettit purchased the License at a Sheriff's sale on or about August 2013 and received a Bill of Sale on October 15, 2013; Pettit's failure to file the Applications in a timely manner after she received the Bill of Sale was the result of non-negligent circumstances, i.e., her then-attorney's failure to timely file the forms, and/or administrative breakdown; Pettit acted promptly upon learning of the License's status; and the Board will not be prejudiced as a result of her delay in filing the Applications. Common pleas granted Pettit's request for a *de novo* hearing via order dated February 4, 2016. The Board thereafter issued an Opinion on February 18, 2016.

In its Opinion, the Board denied standing and *nunc pro tunc* relief to Pettit, finding that she failed to produce any documentary evidence that she was entitled to act on behalf of Licensee or as a third party. (Board Decision at 16-17; Conclusions of Law (COL) ¶ 1.) The Board applied the Supreme Court's test for *nunc pro tunc* relief as set forth in *Cook*, to determine whether an extension of the

---

[9] It is unclear why this is characterized as a "*nunc pro tunc* appeal" because Pettit filed it within the 20-day statutory appeal period under Section 464 of the Code, 47 P.S. § 4-464.

statutory period to file a renewal application *nunc pro tunc* was appropriate. (Board Decision at 17-19.) Because the License had expired as of October 1, 2011, and no action was taken on the License within the two-year window permitted by Section 470(a) of the Code, 47 P.S. § 4-470(a),[10] the expiration of the License became permanent on September 30, 2013, and it "passed from existence" as of October 1, 2013; therefore, the Board determined that it did not have authority to entertain the Applications. (Board Decision at 19; COL ¶ 7.) Moreover, even if *nunc pro tunc* relief was appropriate here, the Board determined Pettit did not provide evidence to resolve the other objections in her favor.

*C. Proceedings before Common Pleas*

A *de novo* hearing was held before common pleas on March 22, 2016,[11] at which Pettit testified briefly.[12] Again, no one appeared on behalf of Licensee. The Court included "[the] full record . . . that came up from the . . . Board . . . with an opinion attached thereto[,]" and Pettit introduced two documents which had not been before the Board: (1) a purported Bill of Sale from the Sheriff dated October 15, 2013; and (2) a "Ratification of Assignment," signed by Pettit, individually, and as manager of Kunkletown Pub, LLC. (R.R. at 156a, 162a-63a, 180a-81a.) Pettit testified that she purchased the License through a Sheriff's sale and that her intent was to place the License into Kunkletown Pub, LLC, a limited liability company she created. She further explained that she assigned the rights to the

---

[10] Section 470(a) provides that the Board may accept late-filed renewal applications if certain requirements are met. 47 P.S. § 4-470(a).

[11] The Board filed a Motion to Dismiss and Motion to Strike Petitioner prior to the hearing on grounds that Pettit does not have standing in this case. (C.R. at 18.)

[12] Pettit's March 22, 2016 testimony appears on pages 160a-76a.

8

License to herself to try and transfer the rights back to her LLC. Pettit also testified that there was a written contract between her and St. Matthew's, but she agreed that it was never provided to the Board. Opposing counsel objected to the two documents based on authenticity and relevancy. (*Id.* at 164a.) Common pleas admitted both documents for consideration in light of the objections made and further stated that it "will determine whether the Court will give [the documents] any weight or not as [the Court] review[s] everything else in th[e] case . . . ." (*Id.* at 166a-67a.) Both Pettit and the Board filed post-trial briefs, and Pettit filed a sur-reply brief.

In its Opinion, common pleas first considered whether Pettit had standing, observing that persons other than licensees may challenge Board decisions. However, citing *William Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975), common pleas concluded that Pettit is not an "aggrieved person," and therefore, does not meet the requirements for standing to appeal the Board's Decision, and accordingly denied the Applications. (Op. at 8.) Common pleas also determined that, even if Pettit had standing, she does not meet the requirements to appeal *nunc pro tunc* under *Cook* because: (1) she was negligent in not filing the Applications at an earlier time; (2) she did not file the Applications until 16 months after she was put on notice that the License did not exist; (3) 16 months is not a short duration of time; and (4) the Board would be prejudiced by allowing this appeal to go forward. (*Id.* at 8-12.) Common pleas therefore concluded that the Board did not have the authority to approve Pettit's Applications after September 30, 2013. Additionally, the Board had no authority to grant the renewal because there was no proof that all tax reports of Licensee were properly filed and paid, nor was a tax clearance certificate received as

9

required by Section 477 of the Code; and the renewal application "**was not made by the entity listed as the owner of the License, or someone with a written assignment of rights**." (*Id.* at 12 (emphasis added).) For these reasons, common pleas denied Pettit's appeal.[13] Pettit now appeals to this Court.[14]

## II. Arguments on Appeal

Pettit, purporting to act on behalf of both herself and Licensee as Applicants, contends that, common pleas erred in finding that Pettit did not have standing to appeal the Board's Decision. Pettit argues that the testimony from the two hearings and other evidence of record support that she "has both a statutory third[-]party interest in the License and that she has been directly damaged as a result of the non-renewal of the License." (Pettit's Br. at 6.) The Board contends that Pettit has waived all issues on appeal for her failure to timely file her 1925(b) Statement.

---

[13] Common pleas directed Pettit to file a Concise Statement of Errors Complained of on Appeal (1925(b) Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa. R.A.P. 1925(b). (C.R. at 6.) By order dated September 1, 2016, common pleas notified the parties that, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa. R.A.P. 1925(a), Pettit had failed to file a 1925(b) Statement as directed by the court's July 21, 2016 order and that it was "unable to make any determinations as to the matters complained of on appeal." (*Id.* at 8.) On September 12, 2016, Pettit filed a 1925(b) Statement, alleging therein that she received the September 1, 2016 order on September 7, 2016, but at that time had not yet received the July 21, 2016 order directing her to file a 1925(b) Statement. (*Id.* at 7.) Pettit's counsel received the July order the next day via fax. On September 15, 2016, Pettit filed a Motion for Reconsideration of common pleas' September 1, 2016 order, which was granted the next day via another 1925(a) order. The order also stated that its prior Opinion and Order dated June 20, 2016, had adequately addressed all issues. (*Id.* at 9.) The Board filed a Motion to Quash Pettit's Motion for Reconsideration of common pleas' September 1, 2016 order, which common pleas denied on September 19, 2016. (*Id.* at 26.)

[14] "This Court's review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence . . . whether the trial court committed an error of law or [whether the trial court] abused its discretion." *Pa. Liquor Control Bd. v. Bartosh*, 730 A.2d 1029, 1032 n.2 (Pa. Cmwlth. 1999) (citation omitted).

10

The Board further asserts that the appeal should be dismissed because Pettit has not complied with Pennsylvania Rules of Appellate Procedure 2101, Pa. R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules . . ."), Rule 2111, Pa. R.A.P. 2111 (prescribing matters a brief shall consist of), and Rule 2117, Pa. R.A.P. 2117 (providing the requirements for the Statement of the Case).[15] However, even if all issues are not waived, the Board argues that common pleas properly determined that Pettit lacked standing to appeal the Board's Decision because the Board could only recognize **Licensee** as an "applicant" under Section 464 of the Code, 47 P.S. § 4-464, and Pettit has **no affiliation with Licensee**. Even if Pettit may be considered an "applicant" under the Code, the Board contends that she does not meet the standard for an "aggrieved party" under *William Penn*. Specifically, Pettit has no "substantial, direct, and immediate" interest in the License. Further, even if Pettit is a third-party that has an interest in the License under the Code, that right is not absolute, and Pettit has not shown that she holds the License at issue here.

### A. *Waiver of All Issues on Appeal*

Preliminarily, we consider whether Pettit waived all issues on appeal, as asserted by the Board. Our review reveals that, although Pettit did not timely file her 1925(b) Statement, common pleas granted her Motion for Reconsideration of the September 1, 2016 Order and accepted her 1925(b) Statement. Common pleas

---

[15] Specifically, Pettit "did not include a Statement of Jurisdiction, the Order or other determination in question, a statement of both the scope of review and the standard of review, a summary of argument, nor the [Board]'s Opinion in support of its decision." (Board's Br. at 17.) Additionally, Applicant's brief does not substantially comply with Pa. R.A.P. 2117 because it only states a prayer for relief and "cursory procedural history." (*Id.* at 18.)

11

also denied the Board's Motion to Quash the Motion for Reconsideration, which it was empowered to do. Contrary to the Board's assertions, Pettit did attach both the Opinion and Order of common pleas to her brief. In her argument section, she also included a statement of both the scope and standard of review. At the end of her conclusion, she includes a prayer for relief that this Court overturn common pleas' decision or remand the matter to common pleas for application of the proper legal standard. Despite other deficiencies in Pettit's brief, the defects are not so substantial that they would prevent this Court from conducting meaningful appellate review of the issues. We, therefore, conclude that Pettit has not waived all issues on appeal.

### B. *Standing to Appeal the Board's Decision*

Section 464 of the Code grants standing to appeal an order of the Board to a court of common pleas for a *de novo* review to "[a]ny **applicant** who has appeared at any hearing" and "who is **aggrieved by** the refusal of the [B]oard to . . . renew" a liquor license. 47 P.S. § 4-464 (emphasis added). The Board argues that Pettit cannot be considered an "applicant" because she has no interest in or affiliation with Licensee. However, the Code does not define the term "applicant." Because she submitted the Applications to the Bureau, we will consider Pettit an "applicant" under Section 464 of the Code.

The crux of the standing issue here is whether Pettit is "aggrieved by" the Board's refusal to renew the License. Pettit must demonstrate that she has "a direct and substantial interest in the adjudication and must show a sufficiently close causal relation between the decision and [her] asserted injury to qualify [her]

12

interest as immediate." *Burns v. Rebels, Inc.*, 779 A.2d 1245, 1249 (Pa. Cmwlth. 2001) (citing *William Penn*, 346 A.2d at 280).

As common pleas emphasized, at issue are **applications to renew Licensee's** License. Notably, Pettit has no interest in or affiliation with Licensee. As common pleas stated, she "is attempting to assert a right to a license listed as being owned by another party, and therefore, having a right to bring a renewal application on their behalf." (Op. at 5). This is even more problematic because the License expired on September 30, 2011, and there was only a two-year period after that date within which it could be renewed before it ceased to exist. *See* 40 Pa. Code § 7.33(3)(v) (stating that "[l]icenses not renewed within 2 years after expiration will cease to exist and will not be reactivated"). However, Licensee took no action to renew the License,[16] and TD Bank did not take the actions necessary to perfect its security interest in the License so it could transfer the License at the Sheriff's sale. Moreover, the purported Bill of Sale naming Kunkletown Pub, LLC as a "designee" of whatever interest in the License TD Bank transferred to St. Matthew's was dated October 15, 2013,[17] after the License had ceased to exist. While we are sympathetic to Pettit's situation, in which she thought she had legally purchased the rights to the License and was therefore

---

[16] The Bureau letter dated April 1, 2012, informing Licensee that a late renewal application could be submitted on or before September 30, 2013, was sent to **Licensee**, not **Pettit**.

[17] We note that there is no explanation in the record of why the Bill of Sale, which purported to sell Licensee's hotel, pub, and the rights to the License, was dated October 15, 2013, when the Sheriff's sale occurred in March 2013, and, according to Pettit's testimony, St. Matthew's transferred Licensee's hotel, pub, and the rights to the License to Pettit on August 5, 2013.

13

authorized to renew the License, Pettit has not produced credible evidence of a chain of title to an existing License.

Therefore, because Pettit provided no credited evidence that she had any direct or substantial interest in the License, she was not "aggrieved by" the Board's Decision, and thus does not have standing to appeal that decision.

### C. Nunc Pro Tunc Relief

Pettit also argues that common pleas erred by applying the incorrect *nunc pro tunc* standard and disregarding substantial evidence proving that *nunc pro tunc* relief was warranted. Part of the confusion here, arises from the multiple meanings of "*nunc pro tunc*" as used in this case. "*Nunc pro tunc*" is a Latin term that technically means "now for then," and describes a doctrine that can allow "a legal entry, judgment, or decree made currently to have effect as of an earlier date when it ought to have been made, done, or recorded." Webster's Third New International Dictionary 1551 (2002). The Code contains a special *nunc pro tunc* provision that only applies to license renewal applications under limited circumstances. Section 470(a) of the Code, 47 P.S. § 4-470(a). Thus, while the Code requires that a renewal application must be filed at least 60 days before the expiration of the license, it also permits, if the renewal is not filed timely, "[t]hat the board, in its discretion, **may accept *nunc pro tunc*** a renewal application filed less than sixty days before the expiration date of the license with the required fees, **upon reasonable cause shown** . . . [,]" and, "the board, in its discretion, **may, after hearing, accept a renewal application filed within two years after the expiration date of the license** . . . ." *Id.* (emphasis added). This statutory *nunc pro tunc* provision contains both a time frame within which an application must be

14

filed, and a legal standard which must be met for Board acceptance of the renewal applications under this provision. The applications must be filed within 60 days before expiration or within 2 years after the expiration of the license, and the legal standard requires "reasonable cause shown." *Id.*

Pettit's Applications did not meet the requirements of this statutory provision. Even if Pettit could legally file the Applications, she did not file them less than 60 days before the expiration of the License, which was September 30, 2011, or within 2 years of the expiration date of the License. Instead, she filed the Applications in April and July of **2015**, almost two years **after** the License ceased to exist as of October 1, 2013. Under the Board's regulations, the License ceased to exist and could not thereafter be reactivated. *See* 40 Pa. Code § 7.33(3)(v) (stating that "[l]icenses not renewed within 2 years after expiration **will cease to exist and will not be reactivated**") (emphasis added). Pettit's filings, therefore, did not meet the Code's *nunc pro tunc* time requirements, which, if they had, would have permitted a consideration of reasonable cause shown for the delay.

Pettit argues that she was entitled to file the Applications *nunc pro tunc* under the "good cause" standard used in *Eathorne*. However, in *Eathorne*, the Court applied the specific statutory provision in the Public Official and Employee Ethics Act (Ethics Act),[18] which permitted an extension of the time within which an answer to a State Ethics Commission Report must be filed. The *Eathorne* petitioner filed his answer to the report one day late due to his counsel's inadvertent miscalculation of the filing date. The Ethics Act provision states that an answer to the report "must be filed within 30 days of the issuance of the findings report **unless the time period is extended by the [C]ommission for**

_____

[18] 65 Pa. C.S. §§ 1101-1113.

15

**good cause shown**." 65 Pa. C.S. § 1108(e) (emphasis added). This statutory provision, unlike the Code provision, does not contain a timing requirement within which the answer must be filed to request the extension. Therefore, the Court applied this statutory provision, and did not use the more stringent jurisdictional *nunc pro tunc* standard that may be applied, generally, where a filing deadline is missed.[19] *Eathorne*, 960 A.2d at 211. However, the statutory provision applied in *Eathorne*, which specifically applies to the filing of answers to reports under the Ethics Act, is not the correct statutory standard to apply in this case, which involves the filing of renewal applications under the Code, which contains its own statutory standard.

Pettit's filings did not meet the statutory standard under the Code for *nunc pro tunc* renewal applications.[20]

---

[19] *Nunc pro tunc* relief may be appropriate as an equitable remedy, where an appeal is untimely filed, if it meets the following criteria:

> [w]here an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

*Cook*, 671 A.2d at 1131. If these criteria are not met, an adjudicative body is without jurisdiction to allow an appeal filed after the expiration of the statutory appeal period.

[20] The Board and common pleas evaluated whether the *nunc pro tunc* standard set forth in *Cook* would provide relief to Pettit and determined it would not. We agree that Pettit would not meet this standard for the reasons explained by the Board and common pleas. Pettit did not file the Applications until two years *after* the License permanently passed from existence and did not prove any non-negligent circumstances that caused the late filing.

## III. Conclusion

Accordingly, because Pettit provided no credited evidence that she has an interest in the License, and thus does not have standing in this case, nor did she meet the requirements for *nunc pro tunc* filing of the Applications, we affirm common pleas' Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jupiter Tavern, Inc., and Gretchen G.   :
Pettit as successor in interest to   :
Liquor License No. H-1212,   :
                     Appellants   :
  :
          v.   :   No. 1243 C.D. 2016
  :
Pennsylvania Liquor Control Board   :

# **O R D E R**

     **NOW**, July 12, 2017, the Order of the Court of Common Pleas of Monroe County, entered in the above-captioned matter, is **AFFIRMED**.

                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge