IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Truck Plazas, LLC      :
     :
v.      :    No. 297 C.D. 2024
     :
Pennsylvania Liquor Control Board,    :    Argued: December 9, 2024
             Appellant    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MATTHEW S. WOLF, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: January 8, 2025

The Pennsylvania Liquor Control Board (Board) appeals from the February 15, 2024 order entered in the Court of Common Pleas of Northumberland County (trial court), which reversed the May 17, 2023 order issued by the Board and directed it to reinstate the liquor license held by American Truck Plazas, LLC, d/b/a Penn 80 Grill (Licensee). Licensee's license was placed in safekeeping pursuant to Section 474.1(d) of the Liquor Code (Code),[1] 47 P.S. § 4-474.1(d). On appeal, the Board challenges the trial court's grant of Licensee's request for *nunc pro tunc* relief. Upon review, we reverse the order of the trial court and reinstate the determination of the Board.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 - 10-1001. Section 474.1(d) of the Code provides: "Any period of time in which the licensee allows the license to lapse by not filing a timely license renewal or license validation shall be considered time in which the license was held in safekeeping[.]" 47 P.S. § 4-474.1(d), added by the Act of December 9, 2002, P.L. 1653.

## Facts and Procedural History

The relevant facts and procedural history of this case are as follows. Licensee is a business located at 1460 North Ridge Road, Milton, Pennsylvania, and is the holder of Pennsylvania Restaurant Liquor License No. R-17377 (License). The License was placed in safekeeping by the Board on April 1, 2019 because Licensee failed to file a renewal application for the period effective as of that date. (Reproduced Record (R.R.) at 29a.)

Approximately two years later, on February 17, 2021, Licensee submitted a renewal application for the licensing period effective April 1, 2019. However, that submission contained numerous deficiencies. The Board sent four letters to Licensee between April of 2021 and June of 2022 addressed to the attention of its bookkeeper and safekeeping contact Jamie Hummel and outlining the necessary steps to maintain the License. The Board also advised Licensee that the License had expired on March 31, 2020 and that the safekeeping period would lapse on July 11, 2022. The Board informed Licensee that "every effort should be made to extend the safekeeping expiration date, reactivate or transfer the license prior to July 11, 2022." (R.R. at 33a.)

The Board sent Licensee an additional letter on August 8, 2022 indicating that the safekeeping period had expired on July 11, 2022, and that because it had taken no steps to transfer the License, release it from safekeeping or to extend the safekeeping period, the License had been revoked by operation of law in accordance with Section 474.1(b) of the Code. (R.R. at 37a.) The Board additionally informed Licensee of its right to request a hearing regarding the License revocation.

On August 25, 2022, Ms. Hummel sent an email to the Board requesting a hearing on the License revocation and Licensee's managing partner, Depinder

2

Grewal, sent an email in October of 2022 requesting the same. The Board issued a notice of hearing on December 9, 2022 advising Licensee that it would "take evidence to determine whether the [L]icense should be revoked as required by Section 474.1(b) of the [] Code, since the safekeeping period expired July 11, 2022, the [L]icense expired March 31, 2020 and [L]icensee did not file a transfer application, a release from safekeeping or, an application and fee to extend the safekeeping period for an additional year." (R.R. at 41a.)

On January 6, 2023, the Board Hearing Examiner (Hearing Examiner) held a hearing at which Mr. Grewal acted *pro se* and was the sole witness. Mr. Grewal testified that Licensee is made up of six members and that he has acted in the role of managing partner for approximately three years. Mr. Grewal acknowledged that the License had been revoked and indicated that he did not recall being made aware of the August 8, 2022 revocation letter. (R.R. at 9a, 12a.) When asked why the License had not been properly maintained, he explained:

> The gentleman that was responsible for this prior to me taking over, and it's really not a good excuse, but was Pritpal S. Grewal, who is my brother and he had passed away in November of 2018. I wasn't made aware - I [] took over the responsibility at that stage . . . I was a minor partner at that time [] and I wasn't aware that there was a process of keeping this [L]icense updated. I've never had a liquor license or such a license with a board. And that's as much as I can say and we – I don't remember any letter in August. I don't know whether it was sent by Certified Mail and which address it was sent to, but I don't recall that. The first I heard of this was, I believe in December, in regards to this hearing.
> . . . .
>
> Q. So sir, you've testified that you weren't aware of the letter that was sent on August 8th, 2022 to Jamie Hummel,

3

indicating that this [L]icense is - that action needs to be taken?

A. No. I wasn't made aware of that at that time. We were [] going through some management changes at the place. As far as we've come to, two to three managers within the last year or so. So we had a lot on our plate, but I was not aware, made aware of that in August at all. [] I wasn't made aware of the situation, I think even until November or December when you guys reached out again.

Q. So didn't you send an email dated Wednesday, October 26th at 2:22 p.m. to the [Board] requesting a hearing in this matter?

A. Well, that might be the time when I said November or December, so October made me decide that he may be aware of it.

Q. Okay.

A. And now from the time, as soon as you made me aware of it, I responded.

(R.R. at 11a-13a.)

Mr. Grewal acknowledged that Licensee should have made maintaining the License a priority, and that insofar that it was not he "would take the responsibility, but also I would say Jamie Hummel." (R.R. at 19a-20a.) Mr. Grewal indicated that neither he nor Ms. Hummel contacted the Board to make it aware of his brother's death or of the need to maintain the License.

Following the hearing, the Hearing Examiner issued a Recommended Opinion concluding that the License "should be revoked as required by Section 474.1(b) of the [] Code, since the safekeeping period expired July 11, 2022, and [L]icensee did not file a transfer application, a release from safekeeping or, an application and fee to extend the safekeeping period for an additional year." (R.R. at

4

48a.) The Hearing Examiner advised the Board to adopt the following conclusions of law:

> 1. [Licensee] received the requisite notice of licensing objections to its request for hearing after revocation of Restaurant Liquor License No. R-17377, and of the date, time and place of the hearing.
>
> 2. [Licensee's] liquor license at No. R-17377 (LID No. 83266) should be revoked as required by Section 474.1(b) of the [] Code, since the safekeeping period expired July 11, 2022, the license expired March 31, 2020, and [L]icensee did not file a transfer application, a release from safekeeping or, an application and fee to extend the safekeeping for an additional year.

(R.R. at 48a-49a.)

On May 17, 2023, the Board issued an order affirming the administrative revocation of the License. (R.R. at 51a.) In its opinion, the Board adopted the recommendation of the Hearing Examiner that the License must remain revoked by operation of law as provided in Section 474.1(b) of the Code. (Board Op., at 12-13.) The Board also concluded that granting *nunc pro tunc* relief was not appropriate under the circumstances of this case. Licensee retained counsel and filed a timely appeal from the Board's decision to the trial court.

The trial court held a *de novo* hearing on February 13, 2024[2] at which it accepted into evidence the administrative record and heard argument from the parties' respective counsel. Licensee requested that the trial court grant *nunc pro tunc* relief and permit it to file all necessary documents to remove the License from safekeeping.

---

[2] A trial court reviewing a decision of the Board concerning a liquor license hears the matter *de novo*, and may sustain or amend the Board's order even when it is based upon the same evidence. *Paey Associates, Inc. v. Pennsylvania Liquor Control Board*, 78 A.3d 1187, 1191 n.5 (Pa. Cmwlth. 2013).

Licensee argued that the Board was taking the License away "because of a breakdown within my client's company during the [COVID] pandemic, during a time when his brother died." (R.R. at 75a.)

However, we note that during the administrative hearing, Mr. Grewal did not testify regarding the impact of COVID-19 on the business or attribute Licensee's delay in making the appropriate filings to the pandemic.

On February 15, 2024, the trial court issued an order and opinion reversing the Board's decision and directing it to reinstate the License. Relying on *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996),[3] the trial court found that *nunc pro tunc* relief was appropriate because Licensee "acted with reasonable promptness to file an appeal and pay any costs associated with License renewal" once Mr. Grewal had actual knowledge of the revocation. (Trial Court Opinion, 2/15/24, at 2.) The trial court additionally stated that the COVID-19 pandemic "may have also played a role in causing [Licensee] not to act with expediency, and/or a breakdown in the administrative system, including the possible failure of [Licensee] to receive mailed correspondence or notices from [the Board]." *Id.* However, the trial court did not address the statutory requirements of the safekeeping provisions of Section 474.1 of the Code. This petition for review followed.

---

[3] As will be discussed more fully *infra*, the *Cook* Court addressed the jurisdictional issue of the circumstances under which granting *nunc pro tunc* relief is warranted where a litigant files an untimely appeal. *Cook,* 671 A.2d. at 1132.

## Discussion[4]

The Board contends the trial court erred in finding that Licensee is entitled *to nunc pro tunc* relief under the *Cook* standard and that the trial court failed to properly consider Licensee's inaction leading to expiration of the safekeeping period and revocation of the License by operation of law. The Board also argues the trial court erred in speculating that the COVID-19 pandemic may have caused Licensee's inaction where Mr. Grewal provided no testimony to this effect. (Board's Br. at 13-25.)

We begin by noting that our review of the Code and the regulations promulgated thereunder "indicate the legislature's clear intent to regulate in plenary fashion every aspect of the alcoholic beverage industry." *1400 North Third Street Enterprises, Inc. v. City of Harrisburg License & Tax Appeal Board,* 175 A.3d 450, 456 (Pa. Cmwlth. 2017). "Every phase, from manufacture to sale and disposition is subject to the exclusive control of the State through its designated arm of enforcement, the [Board]." *Id.* It follows then that "there is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages." *Id.*

We also emphasize that "[a] liquor license **is a privilege** granted by the state, and those entrusted with that privilege must demonstrate the **highest degree of responsibility** to their fellow citizens." *770 Ameribeer, Inc. v. Pennsylvania Liquor Control Board*, 318 A.3d 998, 1005 (Pa. Cmwlth. 2024) (emphasis added). "One who accepts a license must be deemed to consent to all proper conditions and restrictions

---

[4] Our review of the grant or denial of *nunc pro tunc* relief is limited to determining whether there was an abuse of discretion or an error of law committed. *Puckett v. Department of Transportation, Bureau of Driver Licensing*, 804 A.2d 140, 143 n. 6 (Pa. Cmwlth. 2002). To the extent this case involves statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *R.W. v. Department of Education (Professional Standards & Practices Commission)*, 304 A.3d 79, 88 (Pa. Cmwlth. 2023), *appeal granted*, 321 A.3d 862 (Pa. 2024).

which have been or may be imposed by the legislature in the interest of public morals and safety." *Id.* "Board licensees are obligated to know, **without need of any warning** from authorities, that they must comply with the [] Code." *Id*. (emphasis added). Thus, our caselaw places the burden of compliance squarely on the licensee.

With respect to the lapsed safekeeping period at issue in the instant case, Section 474.1 of the Code provides in pertinent part:[5]

> (b) The board may hold the license in safekeeping for a period not to exceed two consecutive years. Any **license** remaining in **safekeeping** for **more than two consecutive years** shall be **immediately revoked** by the Bureau of Licensing **unless** a **transfer** application **or** request for **reissue** from safekeeping has been filed prior to the expiration of the two-year period or unless the board has approved a request to extend the safekeeping for an additional year as set forth in subsection (g).
> . . . .
>
> (d) **Any** period **of time** in which the licensee allows the license to **lapse** by not filing a timely license renewal or license validation shall be **considered** time in which the license was held in **safekeeping** for purposes of this section.
> . . . .
>
> (g)(1) A licensee whose license is subject to this section may, upon written request, apply to the board to allow the license to remain in **safekeeping for an additional one year**. The written request must be accompanied by a ten thousand dollar ($10,000) fee for licenses placed in safekeeping from counties of the first class, second class, second class A, third class and fourth class and a fee of five thousand dollars ($5,000) for licenses placed in safekeeping from counties of

---

[5] Our object in interpreting a statute is to ascertain the intent of the General Assembly, the best indicator of which is the plain language of the statute itself. *R.W.*, 304 A.3d at 88. Where statutory language is clear and unambiguous, we must give effect to its words and may not look beyond its plain meaning under the guise of pursuing its spirit. *Id.*

the fifth through eighth classes, except that the fees for clubs and catering clubs shall be five thousand dollars ($5,000) for licenses placed in safekeeping from counties of the first class, second class, second class A, third class and fourth class and one thousand dollars ($1,000) for licenses placed in safekeeping from counties of the fifth through eighth classes. For each subsequent year in safekeeping, the fees set forth in this paragraph shall be doubled over the amount charged for the previous year's fee. . . .

47 P.S. § 4-474.1(b), (d), (g)(1) (emphasis added).

Thus, pursuant to the plain language of the above-stated provisions, a license remaining in safekeeping beyond its safekeeping period "shall be immediately revoked" unless the licensee takes the required action to request that the license be transferred, reissued from safekeeping, or seeks an extension of the safekeeping period.

Here, the record reflects that the License expired on March 31, 2020, and the safekeeping period lapsed on July 11, 2022. During that time period Licensee did not exercise any of the three options available to it under the plain language of Section 4-474.1(b) of the Code. As a result, the License was automatically revoked by operation of law. The record demonstrates Licensee was provided ample time and notice of its obligation to comply with the safekeeping provisions of the Code, yet it failed to act in a timely fashion. Although the trial court posited that COVID-19 issues may have caused the delay, Mr. Grewal did not testify regarding any impact the pandemic had on the business or attribute Licensee's failure to make appropriate filings to it.

Further, having accepted the privilege of licensure, Licensee was responsible for complying with all applicable statutory filing deadlines. *See 770 Ameribeer, Inc.*, 318 A.3d at 1005. Licensee instead failed to act with "the highest degree of responsibility" to maintain that privilege and acknowledged that its inaction was attributable to its own disorganization and ignorance of the law. *See id.*

9

With respect to the trial court's determination that *nunc pro tunc* relief was warranted under the circumstances of this case, we disagree for multiple reasons.

First, although "the Code contains a special *nunc pro tunc* provision, [it] **only applies to license renewal applications** under **limited** circumstances. Section 470(a) of the Code." *Jupiter Tavern, Inc. v. Pennsylvania Liquor Control Board*, 171 A.3d 921, 928 (Pa. Cmwlth. 2017) (emphasis added). Specifically, Section 470(a)(1) requires that a renewal application must be filed at least 60 days before the expiration of the license, but also provides that "the **[B]oard**, in its discretion, **may accept *nunc pro tunc*** a renewal **application filed less than sixty days before the expiration date of the license** with the required fees, upon reasonable cause shown and the payment of an additional filing fee of one hundred dollars ($100.00) for late filing." 47 P.S. § 4-470(a)(1) (emphasis added). This statutory *nunc pro tunc* provision delineates both a time frame within which a renewal application must be filed and the legal standard of reasonable cause required to be met for Board acceptance of the application.

However, no equivalent *nunc pro tunc* provision exists with regard to safekeeping. In contrast, under subsection 474.1(b) of the Code, the Board is required to revoke a license immediately upon expiration of the safekeeping period. 47 P.S. § 4-474.1(b). The fact that the legislature elected to include a *nunc pro tunc* provision in a different section of the Code, but omitted it with respect to safekeeping in favor of implementing a mechanism for **automatic revocation** demonstrates that the legislature knew how to carve out a *nunc pro tunc* exception but simply chose not to do so with respect to safekeeping.

Second, while the trial court relied on *Cook* in granting Licensee *nunc pro tunc* relief, *Cook*'s holding addressed a **jurisdictional** issue and is inapposite to the instant case. In *Cook*, our Supreme Court considered whether an unemployment

compensation claimant was entitled to *nunc pro tunc* relief where he filed his appeal four days late because he was hospitalized. *Id.* at 1131.[6] The *Cook* Court held that "**where an appeal** is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court **may allow an appeal** *nunc pro tunc*." *Id.* (emphasis added*); see also Arena Beverage Corp.*, 97 A.3d at 452 (reversing trial court order granting *nunc pro tunc* relief because there were no extraordinary circumstances to justify court's extension of the legislatively mandated 20-day **appeal period**).

This case, however, does not involve the jurisdictional issue raised by the filing of an untimely appeal. Instead, Licensee received a hearing before the Hearing Examiner upon its request and filed a timely appeal from the Board's decision in the trial court. *Cook* therefore has no bearing on the safekeeping issue involved here.

In sum, we conclude the trial court erred in granting Licensee *nunc pro tunc* relief without considering and applying the mandatory statutory safekeeping provisions of the Code. We therefore reverse the trial court's order and reinstate the Board's decision.

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] "The timeliness of an appeal goes to the jurisdiction of the body appealed to and its competency to act." *Arena Beverage Corp. v. Pennsylvania Liquor Control Board*, 97 A.3d 444, 448 (Pa. Cmwlth. 2014).

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Truck Plazas, LLC      :
                                   :
          v.                  :    No. 297 C.D. 2024
                                   :
Pennsylvania Liquor Control Board,  :
                 Appellant   :

## *ORDER*

AND NOW, this 8th day of January, 2025, the February 15, 2024 Order of the Court of Common Pleas of Northumberland County is reversed and the May 17, 2023 determination of the Pennsylvania Liquor Control Board is reinstated.

_____
PATRICIA A. McCULLOUGH, Judge